# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RICHARD BETHELY (#609204)**

**VERSUS**

**DARRYL VANNOY, ET AL.**

**CIVIL ACTION**

**NO. 19-463-JWD-RLB**

*Consolidated with*:

**RICHARD BETHELY (#609204)**

**VERSUS**

**DARRYL VANNOY, ET AL.**

**CIVIL ACTION**

**NO. 19-798-SDD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on November 4, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RICHARD BETHELY (#609204)

VERSUS

DARRYL VANNOY, ET AL.

CIVIL ACTION

NO. 19-463-JWD-RLB

*Consolidated with*:

RICHARD BETHELY (#609204)

VERSUS

DARRYL VANNOY, ET AL.

CIVIL ACTION

NO. 19-798-SDD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* R. Docs. 1 and 32. The State has filed an opposition to the petitioner's application. *See* R. Docs. 18 and 33. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Richard Bethely, challenges his conviction, entered in 2013 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of second degree murder and one count of attempted second degree murder. The petitioner contends that (1) his confession was coerced (2) the prosecutor knowingly solicited false testimony, and (3) he was provided with ineffective assistance of counsel at trial.

### Factual Background

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal (*State v. Bethely,* 14-1686, 2015 WL 1893251 (La. App. 1 Cir. 4/24/15)), are as follows: From approximately early November to mid-December 2009, Yolanda Franklin lived

with Avis Daniel at his apartment in Baton Rouge. Daniel rented the apartment, and Franklin lived there as she attempted to get her life back on track. During the time she stayed with Daniel, Franklin met petitioner, who introduced himself as "Chop."[1] Over a period of about a month, Franklin and petitioner carried on a casual relationship, throughout which they occasionally engaged in sexual intercourse. During this time, petitioner visited Franklin at Daniel's apartment on several instances.

On at least two occasions, petitioner witnessed Franklin in the presence of another man (besides Daniel). The first time, petitioner went to Daniel's apartment in the early morning (approximately 4:00 or 5:00 a.m.). When he knocked on the door, Franklin, Daniel, and a male friend named Dee were visiting. Seeing that Franklin had company, petitioner left. The second time, Franklin was returning to Daniel's apartment complex with a male, Randy, who she was potentially interested in dating. As Franklin leaned back into Randy's vehicle to kiss him goodbye, she noticed petitioner sitting in his white Pontiac Grand Prix, which was parked next to the complex's dumpster. Petitioner did not follow Franklin to Daniel's apartment.

Late on the evening of December 18, 2009, Franklin was walking home to Daniel's apartment complex when she began to hear loud music as she approached one of the complex's gates. She turned around and saw petitioner's white Pontiac Grand Prix. Petitioner called out to Franklin and told her that he was going to teach her about "playing with" him and that he was going to "smash" her. Petitioner also allegedly admitted to Franklin that he had set Daniel's vehicle on fire several days earlier. Franklin ran inside the complex and made her way to Daniel's apartment. She told Daniel what petitioner had said to her, and Daniel opened the door

---

[1] Petitioner also later told Franklin that his name was "Kenneth" and that his rap name was "Merciless."

to look for petitioner but did not see him. Eventually, Franklin took a shower and went to sleep on Daniel's living-room couch around 3:15 a.m. (on December 19).

Around 4:00 a.m., Franklin woke up to loud banging on Daniel's apartment door. Daniel asked who was there, and the person outside identified himself as Kenneth. Daniel walked to the door and opened it, at which point he was immediately shot. Franklin saw Daniel fall to the floor, and she looked at the doorway to see petitioner standing there with a gun. Petitioner turned toward her and shot multiple times. Franklin suffered wounds to her face, arm, torso, and leg, but she survived her injuries. Daniel died almost immediately from a gunshot wound to his face, which caused projectile fragments to lodge in skeletal muscle in the back of his neck.

When officers responded to the scene of the shooting, Franklin was still conscious. In speaking to BRPD Officer Adam Lea, she identified her assailant as "Kenneth." On the day following the shooting, BRPD Detective Brian Watson received a tip from an anonymous caller and several Crime Stoppers tips that petitioner was the individual who had shot Daniel and Franklin. On the basis of that information, BRPD Detective John Norwood presented Franklin with a six-photograph lineup. From that lineup, Franklin identified petitioner as the person who had shot Daniel and herself.

Subsequent to Franklin's positive identification of petitioner, Detective Watson secured an arrest warrant for petitioner and search warrants for several addresses, including homes occupied by petitioner's mother and wife. Petitioner was ultimately arrested following a brief foot pursuit from his mother's home. He later gave a statement in which he admitted to shooting Daniel and Franklin, but claimed that he did so out of self-defense.

**Procedural History**

After a trial by jury conducted in February and March 2013, the petitioner was found guilty of one count of second degree murder and one count of attempted second degree murder. The petitioner was sentenced on March 7, 2013, to life imprisonment without the benefit of probation, parole or suspension of sentence on count one and fifty years on count two, to be served consecutively. The petitioner thereafter appealed his conviction.

On April 24, 2015, the petitioner's conviction and sentence were affirmed by the Louisiana Court of Appeal for the First Circuit. *See State v. Bethely,* 14-1686, 2015 WL 1893251 (La. App. 1 Cir. 4/24/15). The petitioner's application for supervisory review in the Louisiana Supreme Court was denied on April 4, 2016. *See State v. Bethely*, 15-1015 (La. 4/4/16), 190 So.3d 1204.

On or about July 3, 2017, the petitioner filed an application for post-conviction relief in the state district court, which was dismissed by the trial court on February 28, 2018. The plaintiff sought further review which was denied by the Louisiana Court of Appeal for the First Circuit. While the petitioner's writ application was pending before the Louisiana Supreme Court, the plaintiff filed the instant Petition on July 11, 2019. On October 23, 2019, the petitioner's Motion to Withdraw Petition was granted. Relief was denied by the Louisiana Supreme Court on November 12, 2019. *See State v. Bethely*, 19-0560 (La. 11/12/19), 282 So.3d 220.

On November 18, 2019 the petitioner filed a new Petition which was docketed as 19-cv-00798. Due to a clerical error, an Order directing the District Attorney to respond was docketed in the petitioner's closed habeas proceeding (19-cv-00463). The two proceedings were consolidated on March 23, 2021.

**Standard of Review**

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State asserts that a deferential review of the state court proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion that all of the petitioner's

claims must be rejected. As discussed below, the Court finds that the petitioner's claims to be without merit.

## Substantive Review

### *Claim (1): Involuntary Confession*

In Claim (1), the petitioner asserts that his confession was not voluntary because the officers implied that if he was not involved in the crime then it was likely his wife who would be arrested and misrepresented the physical evidence. In *Miranda v. Arizona,* the Supreme Court recognized that custodial interrogations, by their very nature, generate "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. 436, 467 (1966). *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused including the requirement that prior to the initiation of questioning, they must fully apprise the suspect of the State's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to "have counsel present ... if [he] so desires." *Id.* at 468–470. Beyond this duty to inform, *Miranda* requires that the police respect the accused's decision to exercise the rights outlined in the warnings. *Id.* at 473–474.

*Miranda* holds that "[t]he petitioner may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." 384 U.S., at 444. There are two inquiries to determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. *Moran v. Burbine,* 475 U.S. 412, 421 (1986). First, the waiver of the right must be voluntary in that it was not the product of intimidation, coercion, or deception. *Id.* Second, the relinquishment must be made with a full awareness of the nature of the right being waived. *Id.* The admission of an involuntary

confession is trial error subject to a harmless error analysis. *Arizona v. Fulminante,* 499 U.S. 279, 310 (1993).

For a petitioner to establish that his confession was involuntary, he must demonstrate that it resulted from coercive police conduct and it is essential that there be a link between the coercive conduct of the police and the confession of the petitioner. *Colorado v. Connelly,* 479 U.S. 157, 163–65 (1986). Any evidence that the accused was threatened, tricked, or cajoled into a waiver will show that the petitioner did not voluntarily waive his privilege. *Miranda v. Arizona,* 384 U.S., at 476. Trickery or deceit is only prohibited to the extent that it deprives the petitioner of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them. *Soffar v. Cockrell,* 300 F.3d. 588, 596 (5th Cir. 2002). "Neither mere emotionalism and confusion, nor mere trickery will alone necessarily invalidate a confession." *Self v. Collins,* 973 F.2d 1198, 1205 (5th Cir. 1992) (internal quotations and citation omitted).

The standard for determining whether a confession is voluntary is whether, taking into consideration the "totality of the circumstances," the statement is the product of the accused's "free and rational" choice. *United States v. Ornelas–Rodriguez,* 12 F.3d 1339, 1347 (5th Cir. 1994) (quoting *Martinez v. Estelle,* 612 F.2d 173, 177 (5th Cir. 1980)). A confession is not rendered involuntary simply because a suspect is advised that "there are advantages to cooperating." *United States v. Ornelas–Rodriguez,* 12 F.3d 1339, 1348 (5th Cir. 1994). "It is reasonable to assume that the cooperation of an arrested person often is prompted by a desire for leniency for himself or others," and statements made in such circumstances are not per se involuntary. *United States v. Robertson,* 582 F.2d 1356, 1368 (5th Cir. 1978).

Prior to trial, the petitioner filed a Motion to Suppress. The petitioner's Motion was denied by the state trial court, and that decision was affirmed on appeal. *See State v. Bethely,* 14-1686, 2015 WL 1893251 (La. App. 1 Cir. 4/24/15).

In reviewing the trial court's decision, the appellate court summarized the evidence pertaining to the petitioner's confession as follows:

> The sole witness to testify at petitioner's suppression hearing was Detective Watson. Prior to petitioner's statement, he was informed of his *Miranda* rights via a waiver of rights form, which he signed. Detective Watson testified at the hearing that no promises or inducements were made to get petitioner to give his statement.
>
> On cross-examination, Detective Watson admitted that he lied to petitioner twice during the interrogation. First, he told petitioner that the police had recovered bloody clothes, shoes, and a gun from a dump in Baker. In fact, no bloody clothing or a gun was ever recovered. Additionally, he told petitioner that they would find the victims' blood in the white Pontiac Grand Prix, a car which actually belonged to petitioner's wife, when the interior was searched with a light. In reality, none of the victims' blood was never recovered from the vehicle. Prior to these misleading statements by Detective Watson, petitioner categorically denied any involvement in the incident.
>
> At trial, the state played for the jury the entire videotaped recording of petitioner's interrogation. In the interrogation, which lasts approximately one hour, petitioner initially stated that he had no idea about any murder that had taken place. After Detective Watson's misleading statements about the evidence against him, petitioner began to grow quiet. Detective Watson then made a statement that if petitioner was not responsible for the shooting, then based on the purported evidence, the only other person who could be responsible was petitioner's wife.
>
> Almost immediately, petitioner stated that she had nothing to do with any shooting. Detective Watson then explained that if he were to believe petitioner's earlier statements, then he would ultimately have no choice other than to arrest petitioner's wife. Ultimately, petitioner decided to give his version of the story. He explained that he had gone to Daniel's apartment to purchase some pills, and Daniel accused him of setting his vehicle on fire. Petitioner stated that Daniel retrieved a gun, which petitioner wrestled away from Daniel and then used to shoot both Daniel and Franklin. Petitioner claimed he shot them in self-defense. Petitioner said he later disposed of his clothes, shoes, and the gun at a friend's house in Baker.

*State v. Bethely,* 14-1686, 2015 WL 1893251 (La. App. 1 Cir. 4/24/15).

The appellate court concluded that the petitioner's confession was freely and voluntarily given, and even if it was not, any error in admitting the videotaped statement at trial was harmless. As stated by the appellate court,

> In the instant case, Detective Watson presented a set of purported facts (the recovery of the gun and bloody clothing and the probable discovery of blood in the white Pontiac Grand Prix) that defendant apparently believed. Though these statements were lies, they certainly made defendant feel as though the police had substantial evidence relating to the incident. As explained above, Detective Watson was within his rights to mislead defendant in this way. Having secured defendant's apparent belief in these statements, Detective Watson then explained that if defendant continued to disclaim responsibility, then the only other person with a logical connection to the vehicle would be defendant's wife, meaning that she might be arrested. Almost immediately, defendant stated that his wife had nothing to do with any shooting, and he subsequently gave Detective Watson his version of the incident.
>
> After carefully reviewing the testimony adduced at the motion to suppress hearing and at trial, and defendant's videotaped statement, in light of the entire record, we find that the state met its burden of proving defendant's confession to be freely and voluntarily given. Prior to his statement, defendant was informed of his *Miranda* rights. The primary impetus for defendant's inculpatory statements appears to have been Detective Watson misleading defendant to believe that there was substantial evidence against him. That technique has been repeatedly held to be lawful. Detective Watson's statements concerning defendant's wife were simply logical extensions of the lies that defendant had apparently begun to believe. Even then, defendant's statements consisted of an explanation intended to mitigate his responsibility for the incident. Therefore, the totality of the interview clearly conveys that the statements were not made because of any promises, coercion, or threats. We find no abuse of discretion in the trial court's denial of the motion to suppress.
>
> Even assuming, *arguendo,* that defendant's statement should have been suppressed, any error in denying the motion to suppress constituted harmless error that would not have changed the outcome of the trial. A trial error does not provide grounds for reversal of a defendant's conviction and sentence unless it affects substantial rights of the accused. *See* La.C.Cr.P. art. 921; *State v. Juniors,* 03–2425 (La.6/29/05), 915 So.2d 291, 331, *cert. denied,* 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006). The test is whether there is a reasonable possibility the error might have contributed to the conviction and whether the court can declare a belief that the error is harmless beyond a reasonable doubt. The reviewing court must find that the verdict actually rendered was surely not attributable to the error. *Juniors,* 915 So.2d at 331.
>
> In this case, there was overwhelming, uncontroverted evidence of defendant's guilt in the form of Franklin's extensive testimony regarding her relationship with defendant and the details of the incident, including defendant's identity as the perpetrator.

This testimony alone would have been sufficient to convict defendant of the offenses charged. *See State v. Orgeron,* 512 So.2d 467, 469 (La. App. 1st Cir.1987), *writ denied,* 519 So.2d 113 (La.1988). Further, defendant's videotaped statement presented a version of the events that contradicted Franklin's narrative and was more favorable to his own defense. Therefore, the admission of the videotaped statement essentially allowed defendant to present to the jury his version of the incident without being subject to cross-examination. Accordingly, the admission of defendant's videotaped statement cannot reasonably be said to have contributed to the verdicts. In view of the other evidence presented of defendant's guilt, it is clear that the guilty verdicts actually rendered were surely unattributable to the admission of defendant's videotaped statement.

This Court has independently reviewed the record provided to the Court, and it is clear that the petitioner was timely advised of his Miranda rights; that he understood his rights, that he was offered no inducements to confess; that he was mentally competent and cooperative at the time he made his confession; and that his statement was made voluntarily. The petitioner has not carried his burden to rebut the presumption of correctness of the trial court's factual findings by clear and convincing evidence, as he is required to do by § 2254(e)(1).[2]

There are circumstances under which the actions of law enforcement officers may be so oppressive and coercive as to overbear an accused person's will and render any statement made involuntary. *See e.g. Lynumn v. State of Illinois,* 372 U.S. 528 (1963). However, Detective Watson's false statements to petitioner regarding the physical evidence and the possibility that the petitioner's wife (the registered owner of the car used in commission of the crime) might be arrested fall far short under the totality of the circumstances to establish that his statement was not knowingly and understandingly given.[3] Any trickery employed by Detective Watson did not deprive the petitioner of knowledge essential to his ability to understand the nature of his rights

---

[2] The Court was not provided with a copy of the recording of the petitioner's confession; however, the recording was shown to the jury and testimony was elicited regarding the same.

[3] In *Lynumn,* the police made serious threats regarding unrelated matters, such as the defendant's access to welfare benefits and custody of her children, and they did so in a way that left the defendant with "no reason not to believe that the police had ample power to carry out their threats." 372 U.S. at 534 ("These threats were made while she was encircled in her apartment by three police officers and a twice convicted felon who had purportedly 'set her up.' There was no friend or adviser to whom she might turn.").

and the consequences of abandoning them. The fact that the petitioner may have become emotional at the mention of his wife, who he was not residing with and with whom he did not maintain a monogamous relationship, does not invalidate the petitioner's confession. "It is reasonable to assume that the cooperation of an arrested person often is prompted by a desire for leniency for himself or others," and statements made in such circumstances are not per se involuntary. *United States v. Robertson,* 582 F.2d 1356, 1368 (5th Cir. 1978). The petitioner's confession claim is without merit.

### *Claim (2): Prosecutorial Misconduct*

In Claim (2) the petitioner asserts that the prosecutor knowingly solicited false testimony from Franklin. In order to prevail on his prosecutorial -misconduct claim, Petitioner must establish that his conviction was obtained by the use of perjured testimony that the prosecutor knew at the time to be false or later discovered to be false and allowed to go uncorrected. *See Napue v. Illinois,* 360 U.S. 264, 269 (1959). Minor inconsistencies in testimony by state witnesses do not establish the government's knowing use of false testimony. *United States v. Griley,* 814 F.2d 967, 971 (4th Cir. 1987).

Respondent correctly argues that the minor inconsistencies in Franklin's testimony are no basis for disregarding the weight and credibility afforded the testimony by the jury. *United States v. Garza,* 990 F.2d 171, 175 (5th Cir. 1993). Resolving inconsistencies or discrepancies in the victim's testimony was the responsibility of the jury. *Jackson v. Virginia,* 443 U.S. 307, 318 (1979). The jury was free to credit or discredit the Franklin's testimony and disregard inconsistencies, which were not substantial, between her statements made to the police and her testimony given at trial. A court may only disrupt a jury's credibility determination if the

testimony was incredible as a matter of law—meaning that the testimony could not possibly be true. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1052 (5th Cir. 1998).

Based on the trial record before the Court, Franklin is consistent with her identification of the petitioner as the shooter, the circumstances surrounding the shooting, and all of the salient facts concerning the crimes committed. She was subjected to cross examination and the jury chose to credit her testimony despite any insignificant inconsistencies. Franklin's testimony was not incredible as a matter of law. As such, plaintiff's claim regarding prosecutorial misconduct is without merit.

### *Claim (3): Ineffective Assistance of Counsel*

Finally, with regards to the petitioner's claims of ineffective assistance of counsel, a habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See,* e.g.*, Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the

circumstances, the challenged action might be considered sound trial strategy. *See,* e.g., *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter*, *supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The above showing is one that the petitioner cannot make in the instant case. The petitioner alleges that his trial counsel was ineffective for failing to impeach or otherwise discredit the testimony of Franklin. A review of the record, however, reveals that the petitioner's

trial counsel questioned Franklin regarding the discrepancies between her statement to Sergeant Norwood and her trial testimony. Trial counsel additionally attempted to discredit Franklin with a line of questioning directed at her criminal history, drug use, and prostitution. Franklin was also specifically questioned regarding the petitioner's version of events.

The jury was presented with conflicting versions and chose to credit the testimony of Franklin, whose credibility was challenged through cross-examination, over the petitioner's version of events presented via his recorded confession. As such, trial counsel's performance did not fall below an objective standard of reasonableness. Accordingly, this claim is without merit.

### Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of petitioner's application or the

correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be denied, and that this proceeding be dismissed with prejudice. It is further recommended that in the event the petitioner pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on November 4, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**